## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMEER AHMED,<br><br>            Plaintiff,<br><br>    v.<br><br>SHARPSPRING, INC., RICHARD CARLSON, STEVEN A. HUEY, SCOTT MILLER, SAVNEET SINGH, and JASON COSTI,<br><br>            Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Sameer Ahmed ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against SharpSpring, Inc. ("SharpSpring" or the "Company") and SharpSpring's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Constant Contact, Inc. through its wholly-owned subsidiary Groove Merger Sub, Inc. (collectively "Constant Contact").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on July 14, 2021. The Proxy recommends that SharpSpring stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby SharpSpring is acquired by Constant Contact. The Proposed Transaction was first disclosed on June 22, 2021, when SharpSpring and Constant Contact announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Constant Contact will acquire all of the outstanding shares of common stock of SharpSpring for $17.10 per share (the "Merger Consideration"). The deal is valued at approximately $240 million and is expected to close in the third quarter of 2021.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by SharpSpring management, as well as the financial analyses conducted by JMP Securities LLC ("JMP Securities"), SharpSpring's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to SharpSpring's stockholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to SharpSpring's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of SharpSpring.

6.     Defendant SharpSpring is a corporation organized and existing under the laws of

the State of Delaware. The Company's principal executive offices are located at 5001 Celebration Pointe Avenue, Gainesville, Florida 32608. SharpSpring common stock trades on NASDAQ under the ticker symbol "SHSP."

7.     Defendant Richard A. Carlson has been CEO and a director of the Company since 2015. Defendant Carlson served as President of the Company from 2015 until May 1, 2020

8.     Defendant Steven A. Huey has been a director of the Company since 2016 and chair of the Board since 2017.

9.     Defendant Scott Miller has been a director of the Company since 2019.

10.    Defendant Savneet Singh has been a director of the Company since 2020.

11.    Defendant Jason Costi has been a director of the Company since April 2021.

12.    Defendants Carlson, Huey, Miller, Singh and Costi are collectively referred to herein as the "Board."

13.    Nonparty Constant Contact, Inc. is a Delaware corporation with its headquarters located at 1601 Trapelo Road, Waltham, Massachusetts 02451. Constant Contact is an affiliate of private equity firms Clearlake Capital Group, L.P. and Siris.

14.    Nonparty Groove Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Constant Contact.

**JURISDICTION AND VENUE**

15.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

16.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

18.     SharpSpring provides cloud-based marketing services, mainly to digital marketing agencies. The Company offers three services: SharpSpring is a marketing automation platform, SharpSpring Mail+ focuses on email marketing, and Perfect Audience is targeted towards small businesses. In 2020, SharpSpring brought in $29.2 million in revenue, a 29% increase from 2019. Gross profits increased as well, from $15.5 million in 2019 to $21.2 million in 2020. For 2021, the Company forecast revenue of $34 million to $36 million, a significant increase over 2020.

19.     On June 21, 2021, the Company entered into the Merger Agreement with Constant Contact.

20.     According to the press release issued on June 22, 2021 announcing the Proposed Transaction:

### Clearlake Capital and Siris-Backed Constant Contact Agrees to Acquire SharpSpring

*Strategic acquisition to maximize growth and audience engagement for small businesses*

**WALTHAM, MA and GAINESVILLE, FL - June 22, 2021** – Constant Contact, an established leader in online marketing, backed by Clearlake Capital Group, L.P. (together with its affiliates, "Clearlake") and Siris Capital (together with its affiliates, "Siris"), today announced it has signed a definitive agreement to acquire SharpSpring, Inc. ("SharpSpring") (NASDAQ: SHSP) in an all cash transaction

4

valued at approximately $240 million including outstanding indebtedness.

Under the terms of the agreement, which has been unanimously approved by the members of SharpSpring's Board of Directors, Constant Contact will acquire all the outstanding common stock of SharpSpring for $17.10 per share in cash. The purchase price represents a 21% premium over SharpSpring's closing share price of $14.11 as of June 21, 2021. The transaction is expected to close in the third quarter of 2021 subject to customary closing conditions including a SharpSpring stockholder approval.

SharpSpring is a cloud-based revenue growth and marketing automation platform that improves the effectiveness of small business's (SMBs) marketing strategy. Designed for SMBs, and often delivered by digital marketing agencies, SharpSpring generates leads, improves conversions to sales, and drives higher returns on marketing investments. The integration of SharpSpring will give Constant Contact's SMB clients the ability to easily and successfully engage customers throughout their journey, helping clients deliver better marketing-driven results.

"Constant Contact and SharpSpring share a mission to help small businesses succeed, and this acquisition represents a powerful opportunity to combine our best-in-class email and ecommerce offerings with SharpSpring's strong suite of revenue growth and marketing automation tools," said Frank Vella, CEO, Constant Contact. "Today's Constant Contact retains the customer-first culture that defined our heritage, and I am excited to expand upon that with a commitment to innovation that will accelerate our growth and build upon the passion and agility that has made our brand a leader in digital marketing for so many years."

"SharpSpring delivers a highly innovative and feature-rich suite of marketing automation software tools. We welcome the company's talented workforce to Constant Contact and look forward to a long partnership," said James Pade, Partner, Clearlake, and Tyler Sipprelle, Managing Director, Siris. "This investment augments Constant Contact's digital marketing software platform by significantly accelerating its product roadmap and enhancing the tools we offer modern-day marketers in their pursuit of key revenue generating activities."

"Today is a great day for SharpSpring and our stockholders as this transaction brings immediate and certain value at an attractive premium," said Rick Carlson, CEO, SharpSpring. "Today is also a great day for our team and our customers, as we partner with a scale platform that brings significant added resources as we strive to deliver even greater value to SMBs. Constant Contact is the authority on digital marketing for small businesses. I am thrilled with the opportunity to bring SharpSpring's revenue growth platform to Constant Contact's nearly 500,000 small business customers while also further investing in and building upon SharpSpring's strong customer and digital marketing agency base."

**B. The Materially Incomplete and Misleading Proxy**

21.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to SharpSpring stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

22.     On July 14, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

> ***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

23.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of JMP Securities's fairness opinion, JMP Securities reviewed "certain financial forecasts of SharpSpring prepared by SharpSpring's management." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that SharpSpring's management provided to the Board and JMP Securities.

24.     Notably, the Proxy fails to disclose the Company's forecasts for 2021 and 2022 as discussed with JMP Securities on January 19, 2021, as well as the updated financial model for 2021 and 2022 discussed with JMP Securities on January 21, 2021, and the updated financial forecast discussed with JMP Securities on June 15, 2021. The Proxy does not disclose how these projections differ from those disclosed in the Proxy. The Board and Company management discussed how SharpSpring's performance in May 2021 impacted the Company's performance in

the future. The Proxy does not disclose projections updated to take into account the Company's performance in May 2021.

25.     The projections that were disclosed in the Proxy omit critical information. The Proxy does not disclose the line items underlying the calculation of Adjusted EBITDA in the Projected Financial Information, as well as the line items underlying the calculation of Adjusted EBITDA for the COVID-19, Downside, Plan and Stretch 2021 Budget Forecasts. The Proxy also fails to disclose the COVID-19, Downside and Stretch 2022 Budget Forecasts, including the line items underlying the calculation of Adjusted EBITDA for each of the COVID-19, Downside, Plan, and Stretch 2022 Budget Forecasts. Finally, the Proxy does not disclose net debt for SharpSpring as of March 31, 2021, and the number of diluted shares of SharpSpring outstanding as of May 25, 2021. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning JMP Securities' Financial Analyses*

26.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the basis for selecting discount rates of 11.5% to 13.5%. The Proxy further fails to disclose the estimated average cost of capital of the Company, and the size premium used in the calculation. In addition, the Proxy fails to disclose the terminal value.

27.     With respect to the *Selected Transactions Analysis*, the Proxy fails to disclose the value of each transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

28.     The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy does not explain the basis for Defendant Miller's significant role in the process. Defendant Miller joined Defendant Carlson at a meeting with Potential Investor A in

August 2020; the other members of the Board were not in attendance. Beginning in November 2020, Party B and SharpSpring discussed a potential acquisition of the Company. Defendant Miller participated in a call with Party B and Defendant Carlson on January 4, 2021. On January 6, 2021, Defendant Miller expressed to Defendant Carlson concerns about a transaction with Party B. The next day, Defendants Miller and Carlson spoke with the CEO of Party B to express "SharpSpring's concerns." The Proxy does not disclose whether Defendants Miller and Carlson discussed their concerns with JMP Securities or with the rest of the Board. The Proxy also does not disclose the basis for Defendant Miller's influence with Party B or Potential Investor A.

29.    Not every member of the Board was involved in important events during the sales process. Members of the Board and SharpSpring's management discussed potential strategic alternatives with investment banks in August and September 2020. The Proxy does not disclose which Board members were included in these calls. Similarly, JMP Securities presented preliminary perspectives on the Company's market valuation to members of the Board and SharpSpring's management on October 28, 2020. The Proxy does not disclose which Board members attended that presentation. And members of the Board and SharpSpring's management attended a meeting with Party C on December 18, 2020. The Proxy does not disclose which Board members attended that meeting.

30.    In 2020, the Company entered into non-disclosure agreements with Party A, Party B, Party C, and Party C's controlling private equity sponsor. None of those non-disclosure agreements included a standstill provision. Between February and May 2021, the Company entered into 14 non-disclosure agreements, of which 11 included standstill provisions. The Proxy does not disclose the basis for not entering into standstill provisions with every party, which parties

were subject to a standstill provision, and whether those standstill provisions impacted the ability of any of the subject parties to re-enter the sales process.

31.     JMP Securities provided preliminary financial analyses to the Board at various times throughout the process. Those preliminary analyses were not disclosed in the Proxy. That includes the preliminary perspectives concerning SharpSpring's market valuation presented to members of the Board on October 28, 2020; the preliminary financial analysis presented to the Board on May 6, 2021; the updated preliminary financial analysis presented to the Board on June 4, 2021; and the financial analysis reviewed with the Board on June 18, 2021.

32.     The Proxy does not disclose whether JMP Securities had any relationship with SharpSpring or Constant Contact in the two years preceding its fairness opinion. In addition, the Proxy fails to disclose whether JMP Securities had any relationship with Clearlake Capital Group, L.P. or Siris.

33.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

34.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

35.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required

to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

36.     Further, the Proxy indicates that on June 21, 2021, JMP Securities reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to SharpSpring stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning JMP Securities's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

37.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Defendants have filed the Proxy with the SEC with the intention of soliciting SharpSpring stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

40.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each

of the Individual Defendants, by virtue of their roles as officers and/or directors of SharpSpring, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of SharpSpring shares and the financial analyses performed by JMP Securities in support of its fairness opinion; and (iii) the sales process.

43. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that JMP Securities reviewed and discussed its financial analyses with the Board during various meetings including on June 18, 2021, and further states that the Board relied upon JMP Securities' financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

44.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of SharpSpring within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SharpSpring and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to SharpSpring stockholders unless

and until Defendants agree to include the material information identified above in the Definitive Proxy;

      B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

      C.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

      D.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      F.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 30, 2021                **ROWLEY LAW PLLC**

                                        *S/ Shane T. Rowley*

                                        Shane T. Rowley (SR-0740)
                                        Danielle Rowland Lindahl
                                        50 Main Street, Suite 1000
                                        White Plains, NY 10606
                                        Tel: (914) 400-1920
                                        Fax: (914) 301-3514
                                        Email: srowley@rowleylawpllc.com
                                        Email: drl@rowleylawpllc.com

                                        *Attorneys for Plaintiff*

14
